■ JEFFREY STERNBERG, Appellant, v FOREIGN CARS OF NEW PALTZ, INC., et al., Respondents.—Mikoll, J.

The complaint in this action alleged that on or about March 23, 1985 in the Village of New Paltz, Ulster County, plaintiff and defendants, through defendant Steve Marton, entered into a contract by the terms of which defendants were to sell a new 1985 BMW M635 CSI automobile, including certain optional equipment, to plaintiff for the agreed sum of $35,000. A written "car and truck invoice" contained a brief description of the auto to be sold, the optional equipment included and the sale price. The invoice also indicated that a $1,500 check had been received as a deposit. As defendants were unable to locate and deliver the described vehicle, plaintiff's attorney sent Marton a letter on August 23, 1985 indicating that unless the automobile was delivered by the end of September 1985, plaintiff would seek to purchase the automobile elsewhere. The letter also indicated that plaintiff would seek to hold Marton "responsible not only for the return of the deposit, but for any difference in the purchase price should the purchase price elsewhere be greater".

In December 1985, plaintiff purchased a similar automobile, a 1985 BMW M635 CSI. At trial there was testimony that the price of the automobile initially ordered had a market value of about $42,000 in October 1985. Plaintiff introduced a letter from J. Vollmer, president of German Automobile Exporters, Inc., from whom he purchased the car, acknowledging receipt of $39,950 for the 1985 BMW. However, customs documentation indicated that the entry value of the auto was declared as only $21,840.

There was also evidence that the vehicle purchased by plaintiff was a "demonstrator" with 1,000 miles on it. The difference between a new M635 and a demonstrator M635 with 1,000 to 1,500 miles on it was stated to be $1,000. There was other testimony indicating the value of the options which the original auto was to have but which the purchased auto was lacking.

Marton claimed that the agreement he made with plaintiff only obligated him to deliver a new BMW M635 CSI automobile described in the invoice if he could find one available. Plaintiff contended that defendants were obligated to deliver the described vehicle within a reasonable time and that after that time had been extended and passed, defendants were liable for any loss sustained by plaintiff because of the nondelivery. The jury found that there was a contract but that plaintiff sustained no damage. Plaintiff moved for judgment notwithstanding the verdict. The motion was denied. This appeal by plaintiff ensued.

There should be an affirmance. Supreme Court properly denied plaintiff's motion to set aside the verdict. On a motion for judgment notwithstanding the verdict, "the trial court must determine from the evidence presented at trial whether any rational basis exists for the conclusion on liability reached by the jury * * *. The test is not whether the jury erred in weighing the evidence presented, but whether any viable evidence exists to support the verdict" (Kozlowski v City of Amsterdam, 111 AD2d 476, 477 [citations omitted]; see also, 8 Carmody-Wait 2d, NY Prac § 62:6, at 542-544).

In the case at bar there was conflicting evidence as to the price plaintiff paid for the car. His own testimony was that he paid $37,800 to German Automobile Exporters, Inc., for it. An expert witness testified that a 1985 BMW M635 CSI would cost in Europe approximately 22,000 American dollars on September 30, 1985. The invoice filed with customs shows the auto was purchased for $21,840. The jury could properly find that the 1985 BMW M635 CSI purchased by plaintiff was substantially similar to the auto sought through the contract with defendants, that plaintiff did not expend more than $35,000 to obtain it and, thus, sustained no damages.

Plaintiff's contention that under Supreme Court's charge he was entitled to the difference between the market value of the described vehicle claimed by plaintiff to be about $42,000 and the agreed sales price of $35,000, regardless of the actual amount he paid for the 1985 BMW he purchased, is not persuasive. The jury could accept the evidence establishing the cost of the car plaintiff purchased as $21,840 and could credit plaintiff with the value of the missing optional equipment and for the fact that the purchased auto was a demonstrator. Plaintiff then would have been made whole for less than $35,000. Significantly, Supreme Court instructed the jurors that "[t]he basic principle of damages in a breach of contract action is to place the plaintiff in no worse but to put

him in no better position than plaintiff would have been had the breach not occurred". The court further advised the jury "that a recovery by a plaintiff is limited to those damages that directly and naturally or proximately flow from the alleged breach". The jurors were also instructed that they would have to "evaluate and determine in dollars * * * what damages naturally, directly and proximately flowed from the non-performance by the defendant[s]". There was no objection taken to the court's charge in this respect.

Additionally, the jury could well have concluded that, under the agreement reached by the parties, Marton had the obligation to sell them the auto described if he was able to find it available but, since Marton did not find the described auto, no breach of the contract occurred and plaintiff sustained no damages. Supreme Court instructed the jury that plaintiff had the burden of proving not only the contract but also that there was a breach of the contract. Marton testified that he contracted "to go out and try to find an M6" and that he continuously made efforts to locate the described auto.

Judgment affirmed, without costs. Mahoney, P. J., Mikoll, Yesawich, Jr., Harvey and Mercure, JJ., concur.